**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| FRANK J. FRAME, | NO. C08-933-JCC-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Frank Frame appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which granted in part but also denied in part his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and this case be DISMISSED with prejudice.

I. FACTS AND PROCEDURAL HISTORY

At the time of Plaintiff's hearing at issue, he was a fifty-six year old man with a high school education and one year of vocational training. Administrative Record ("AR") at 21,31, 143. His past work experience includes employment as a janitor in a cabinet shop, a deburrer

REPORT AND RECOMMENDATION - 1

specialist in a metal fabrication shop, and a drafter for the Boeing Company. AR at 146. Plaintiff was last gainfully employed on June 1, 2003. AR at 24.

On November 17, 2003, plaintiff filed a claim for DIB. AR at 21. On February 18, 2004, he filed an application for SSI. Both applications were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing which took place on October 6, 2005, and on March 29, 2006, he received an adverse decision from the ALJ. He appealed to the Appeals Council, but because the transcript of the hearing could not be located, the matter was returned to the ALJ for a *de novo* hearing. *Id.* A new hearing took place on June 18, 2007. AR at 355-96. On July 23, 2007, the ALJ issued a decision finding the plaintiff to be disabled as of the advent of his fifty-fifth birthday, as he had reached "advanced age" pursuant to Social Security Regulations (20 C.F.R. §§ 404.1564 and 416.964). However, the plaintiff was found not disabled prior to this time. Plaintiff's administrative appeal of this partial denial was denied by the Appeals Council on April 11, 2008, AR at 7-9 making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

Id. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Frame bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant    physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 23, 2007, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since June 1, 2003, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post remote laminectomy; cognitive disorder, status-post head injury and craniotomy; and dysthymic disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, since his alleged onset date, the claimant has had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing and pulling the above amounts. He is able to perform simple, repetitive tasks in a job that involves occasional contact with the public.

6. The claimant's residual functional capacity allows him to perform the exertional demands of "light" work under the regulations. If a claimant can do light work, he or she is also deemed capable of doing sedentary work (unless he or she has additional limitations not at issue in this case).

7. The claimant is unable to perform any of his past relevant work.

8. The claimant was 51 years old on the alleged onset date of disability. This is defined in the regulations as an individual "closely approaching

REPORT AND RECOMMENDATION - 5

advanced age." On XXXXX , 2006,[2] the claimant turned 55, and his age category changed to an individual of "advance age."

9. The claimant has a high school education and is able to communicate in English.

10. The claimant has no job skills that would transfer to other occupations.

11. Prior to XXXXX, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed.

12. Beginning on XXXX, 2006, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that claimant could perform.

13. The claimant was not disabled prior to XXXXX, 2006, but became disabled on that date and has continued to be disabled through the date of this decision.

AR at 24-32.

## VI. ISSUES ON APPEAL

The issue on appeal is whether substantial evidence supports the ALJ's conclusion that the plaintiff was not disabled prior to XXXX, 2006, when he began to receive benefits. The specific assignments of error are:

1. Did the ALJ err in his evaluation of the opinion of Dr. Rudisill?

2. Did the ALJ err in making an adverse credibility determination?

3. Did the ALJ err in his assessment of the plaintiff's RFC?

4. If there is error, should the case be remanded for an award of benefits?

Dkt. No. 12 at 6.

---

[2] Pursuant to W.D. Washington Local Rule 5.2, the actual date is redacted.

REPORT AND RECOMMENDATION - 6

# VII. DISCUSSION

## A. The ALJ Did Not Err in His Evaluation of the Opinion of Dr. Rudisill or His Assessment of Plaintiff's Credibility

Plaintiff's first assignment of error is that the ALJ failed to properly consider the opinion of Heather Rudisill, M.D. It appears that Dr. Rudisill treated plaintiff at the Valley Medical Center for back pain. Dr. Rudisill wrote that plaintiff had significant mental and memory problems and spine disease that severely limited his physical abilities. AR at 307. The ALJ rejected the opinion, raising questions as to whether Dr. Rudisill was in fact a treating physician, and concluding that her report was inconsistent with the remaining medical evidence of record and the plaintiff's daily activities.

### *1. Standards for Evaluating Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes, 881 F.2d at 751; see also Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. Magallanes, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. (citing Magallanes, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p 1996 WL 374180, at *2 (S.S.A.). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Orn* at 495 F.3d 632-33.

> 2. *The ALJ Did Not Err In His Assessment of Dr. Rudisill Opinion or Plaintiff's Credibility*

As noted above, the ALJ initially questioned whether Dr. Rudisill actually was a treating physician. On December 14, 2005, counsel for plaintiff faxed a residual functioning capacity report to the ALJ. AR at 303-07. There were no other indications in the medical files that a person named Dr. Rudisill had seen plaintiff. The report was a check-the-box type of form, but at the end, Dr. Rudisill also completed a narrative that stated:

> Frank Frame has significant memory impairment that persists from brain
> injury… [around] 1976 and has had formal evaluation in that regard on 3/19/04.
> He has significant spine disease both facet and disc that severely limits his

REPORT AND RECOMMENDATION - 8

physical abilities. We are attempting epidural steroid injection(s) in attempt to decrease pain and increase functioning but I am uncertain as to how much improvement we will get because of chronic nature of the disease. Currently he is severely impaired by both mental/memory issues as well as pain and physical disease of lumbar spine.

At the time of the initial hearing there were no other indications in the medical records that the plaintiff had seen Dr. Rudisill. On July 19, 2007, after the initial opinion, after the second hearing was ordered because tape of the first hearing was lost, and after the second hearing took place, but four days before final ALJ opinion was issued, plaintiff's counsel delivered 15 pages of medical reports (AR at 327-42), of which, 7 (AR at 328-34) relate to Dr. Rudisill. It appears that Dr. Rudisill saw the plaintiff on October 6 or 7, 2005 (AR at 333-34), October 28, 2005 (AR at 331) and December 9, 2005 (AR at 328). There are no further records of meetings with Dr. Rudisill after the December 9, 2005 appointment, at which Dr. Rudisill reported spending more than half the time counseling the plaintiff and filing out the disability report discussed above. AR at 328.

These reports were sent to the Appeals Council, with other documents, after the ALJ's adverse decision was issued, and are therefore part of the record. AR at 325-26. It appears from all of the records that Dr. Rudisill was a treating physician for a limited period of time. However, this is of no avail to plaintiff because the Court finds that the ALJ evaluated the medical evidence consistent with the hierarchy set forth in *Orn.*

The ALJ concluded that the opinion of Dr. Rudisill was not supported by the bulk of the medical evidence of record nor by plaintiff's daily activities. AR at 30. If accurate, this would serve as a "specific and legitimate" reasons for rejecting her medical opinion. In addition, the Commissioner argued that there was no objective basis for her opinions, but relied solely on plaintiff's subjective complaints as there were no records or clinical findings to support her opinion. Dkt. No. 13 at 4. The plaintiff contends that an MRI is just that. Both parties are correct to some degree.

Dr. Rudisill offers two opinions. The first is that plaintiff is severely impaired as to "mental/memory problems, as to which she provides no objective basis for her opinion.[3] The second is that plaintiff is severely impaired due to "pain and physical disease of the lumbar spine," as to which an MRI provides support.

As to the back impairment, although Plaintiff severely injured his back due to an auto accident that happened in the mid-1970s, he was able to work with this condition at least until his last employment in 2003. The ALJ concluded that "the medical evidence of record confirms that he [t]he claimant was not having significant back problems at the time he stopped working. He did not complain of back pain in any of the records in evidence from 2003. The first mention of back pain is in an examination from May 18, 2004, at which time the claimant reported a history of back problems but denied any current back pain or radicular symptoms." AR at 27. This conclusion is supported in the record. AR at 270. From this report, his treating doctor at Valley Medical Center concluded that plaintiff was probably "mildly impaired" by his low back pain. *Id.* Later, in November 2004, plaintiff saw another doctor at Valley Medical Center, Dr. Grayson. She was a treating physician for plaintiff and reported that "He has had continued chronic low back pain, which he just has to be careful about, but he is able to do his normal activities." AR at 265. Sharon Shearer, M.D., a State reviewing doctor concluded that the plaintiff was occasionally limited, but was able to perform light work activity. AR at 274-75.

Dr. Rudisill's opinions in this case are not supported by her colleagues at Valley Medical Center, who were also treating physicians. In addition, they are not in line with the

---

[3] Plaintiff suggests that this is supported by a reference to Dr. Dixon's evaluation. Dkt. No. 15 at 3. Yet, Dr. Dixon's report would not support the conclusion that plaintiff suffered a mental impairment to the extent urged by Dr. Rudisill. See Dixon report. AR at 257-63. The ALJ gave substantial weight to the opinion of Dr. Dixon in concluding that the plaintiff was not disabled. AR at 28-29. Plaintiff does not suggest that either Dr. Dixon's opinions were flawed or that the ALJ erred in his assessment of Dr. Dixon's evaluation.

opinions of the other medical reports before the ALJ. The ALJ did not err in concluding that Dr. Rudisill's report was not consistent with the rest of the medical evidence of records.

The ALJ's rejection of Dr. Rudisill's opinions is also supported by the adverse credibility determination based, in part, on plaintiff's daily activities. Plaintiff reported that he was able to mow the lawn, could lift 100 pounds and walk for 1 to 2 miles before needing to rest, and went fishing with his friends as often as possible. AR at 27, 30, 207. Plaintiff objects to reliance on some of his self-statements of his capabilities, stating that the ALJ erred by ignoring plaintiff's hearing testimony that he was simply "exaggerating" when he provided these statements. Dkt. No. 12 at 7, AR at 386. This is a classic credibility issue, which is within the province of the ALJ, rather than this Court. *Andrews*, 53 F.3d at 1039. The adverse credibility determination based on plaintiff's own reports of his daily activities is supported by the record, and this also provides a secondary basis for the ALJ's decision to reject Dr. Rudisill's opinion. The ALJ did not err in either regard.

B.  The ALJ Did Not Err in His RFC Assessment

The ALJ determined that until plaintiff became an individual of advanced age, as defined by the regulations, he had the RFC to perform the exertional demands of "light" or "sedentary" work. Plaintiff's RFC is the most he can do considering his impairments and limitations. SSR 96-8p, *available at* 1996 WL 374184. "[M]any medical conditions produce pain not severe enough to preclude gainful employment." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ's RFC finding and hypothetical to the vocational expert "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints" that lacked credibility. Tr. 26, 392-93. *Bayliss*, 427 F.3d at 1217. Plaintiff objects that the ALJ's hypothetical failed to include limitations expressed by Drs. Clifford and Peterson. Dkt. 12 at 14-15. Drs. Clifford and Peterson are Washington State reviewing psychologists who completed a Mental Residual Functional Capacity Assessment

Report. AR 293-96. Among other things, the doctors checked a box indicating "moderate" limitations in "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." At the hearing, the VE was asked by plaintiff's counsel if a number of limitations, including a "moderate limitation on the ability to complete a normal workday and work week." AR at 395. The VE testified that this would rule out most jobs, because "he would miss time from work more than would be acceptable by most employers." *Id.*

However, the check for moderate limitations by Drs. Clifford and Peterson must have referred to limitations on his ability to perform at a constant pace. In their written assessment, they specifically noted that there "is no evidence that he cannot sustain satisfactory attendance and punctuality." AR at 296. With respect to problems of concentration, persistence and pace, the ALJ included these limitations in his RFC by limiting him to simple, repetitive tasks with only occasional public contact. AR at 26.

Plaintiff further objects that his mental impairments would prevent him from performing as a flagger, one of the representative jobs named by the VE. This is unavailing to plaintiff, as this was identified solely as a representative job. Moreover, the plaintiff raises no similar objection specific to the other representative job identified by the VE, that of garment sorter. Accordingly, the inclusion of a flagger as a possible job must be considered harmless error at best. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error analysis is appropriate where the mistake is nonprejudicial to claimant or irrelevant to nondisability conclusion).

### VIII. CONCLUSION

The role of this Court is limited. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomast*, 278 F.3d at 954. It is possible to interpret the medical evidence as suggested by the plaintiff.

However, this is not the only rational interpretation of the evidence. For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED and that this case be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 13th day of April, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge